| | |
|---|---|
| MITSUI SUMITOMO INSURANCE COMPANY, LTD., (a foreign entity) a/s/o ALPINE ELECTRONICS, INC., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 05 C 4525 |
| MOORE TRANSPORTATION, INC., an Indiana entity, ARL, INC., d/b/a American Road Lines, a Pennsylvania entity, and MR. JAMES EVANS, an Indiana resident, | ) Judge Rebecca R. Pallmeyer ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case arises out of the mysterious disappearance of 1,500 CD-tape audio units that were to be shipped from Biatorbagy, Hungary for delivery in Greenwood, Indiana in 2004. When the container that was supposed to contain the cargo eventually arrived in Greenwood, it was empty. Mitsui Sumitomo Insurance Company, Ltd. ("Plaintiff"), a commercial insurance firm headquartered in Tokyo, Japan, insured Alpine Electronics, Inc. ("Alpine"), the purchaser of the cargo, for its loss. Defendant ARL, Inc. ("ARL"), a Pennsylvania corporation, is an interstate carrier of goods and contracted to transport the cargo from Chicago to Greenwood. Defendant Moore Transportation, Inc. ("Moore"), an Indiana corporation, procured the shipping contract for ARL. Defendant James Evans ("Evans") worked as an independent contractor for ARL and transported the container that was supposed to contain the cargo from Chicago to Greenwood.

Plaintiff paid Alpine $408,012.00 for the lost cargo and is the subrogee of Alpine's rights against Defendants Moore, ARL, and Evans. Against each Defendant, Plaintiff brings a claim under the Carmack Amendment, 42 U.S.C. § 14706 (Counts I, IV, VII), a claim for breach of "intermodal transportation" contract (II, V, VIII) , and a claim for breach of obligations as carrier and/or bailee

(III, VI, IX).  Plaintiff has moved for summary judgment against Defendant ARL on Plaintiff's Carmack Amendment claim (Count IV).  Defendants have moved for summary judgment on all counts.  For the reasons stated below, Plaintiff's motion for summary judgment is denied.  Defendants' motion for summary judgment is granted as to Counts V, VI, and VII and is denied as to all remaining counts.

**BACKGROUND**[1]

### A.    Transport of Container No. NYKU 608014-7

Around March 29, 2004, Alpine of Hungary sold 1,500 CD-tape audio units ("the cargo") to Alpine Electronics Inc. for €220,500.  (Pl. LR 56.1 Stmt. ¶ 5; Declaration of Attila Cserepes ¶ 6, Ex. C to Pl. LR 56.1 Stmt.)  On March 29, 2004, Alpine Electronics was invoiced for the sale of the cargo, which was to be delivered to Alpine of America in Greenwood, Indiana.[2]  (3/29/04 Invoice, Ex. 1 to Cserepes Decl.)  The events that followed are in dispute.  According to Plaintiff, Alpine of Hungary loaded the shipment into Container No. NYKU 608014-7 ("the container") in Biatorbagy, Hungary.  (Pl. LR 56.1 Stmt. ¶ 7.)  In support of this assertion, Plaintiff cites the affidavit of Attilla Cserepes, the logistics manager at Alpine's manufacturing facility in Hungary; Cserepes supervises the sale and shipment of products manufactured by Alpine of Hungary.  (Cserepes Decl. ¶ 3.)  Cserepes attested that "Alpine of Hungary loaded the 1,500 units in 250 cartons on 13 palettes into

---

[1]    The background is drawn from the following: Plaintiff's Local Rule 56.1(a)(3) Statement of Material Uncontested Facts in Support of its Motion for Summary Judgment Against Defendant ARL, Inc. on Count IV ("Pl. LR 56.1 Stmt."); Defendants' Response to Plaintiff's Local Rule 56.1(a) Statement of Material Facts as to Which There is no Genuine Issue ("Def. LR 56.1 Resp."); Defendants' Statement of Additional Material Facts as to Which There is no Genuine Issue ("Def. Add'l LR 56.1 Stmt."); Plaintiff's Reply to Defendants' Statement of Additional Material Facts ("Pl. LR 56.1 Resp. to Def. Add'l Stmt."); Defendants' Local Rule 56.1(a) Statement of Material Facts as to Which There is no Genuine Issue and that Entitles it to Judgment as a Matter of Law ("Def. LR 56.1 Stmt."); and Plaintiff's Response to Defendants' Local Rule 56.1(a) Statement of Material Facts and Additional Facts ("Pl. LR 56.1 Resp.").

[2]    The relationship among Alpine of Hungary, Alpine Electronics, and Alpine of America is not clear from the record.

Container No. NYKU608014-7 and, thereafter, in the presence of the customs representative, affixed Seal No. NYK 0269869 to the container doors on March 29, 2004." (*Id.* ¶ 11.) Defendants dispute this fact, noting that Cserepes did not state that he witnessed the loading of the cargo. (Def. LR 56.1 Resp. ¶ 7.) Notably, although Cserepes attested that he had personal knowledge of the facts in his declaration, (Cserepes Decl. ¶ 1), he does not state that he, or anyone else in particular, witnessed or was responsible for the physical loading of the cargo. Cserepes' vague statement, the only evidence to which Plaintiff cites to support that the cargo was loaded into the container in Hungary, does not satisfy the court. The court therefore concludes that there is a genuine dispute as to whether or not Alpine of Hungary actually loaded the cargo into Container No. NYKU 608014-7.

Plaintiff also contends that, when the 1,500 units were loaded into the container, they were in "good order and condition," again citing only Cserepes' declaration. (Pl. LR 56.1 Stmt. ¶ 8, citing Cserepes Decl. ¶ 8.) Cserepes also attested that, prior to shipment, all electronics items are inspected and tested by Alpine of Hungary to ensure they are in good order and condition, and that items that are not in good order and condition are not allowed to be shipped. (Cserepes Decl. ¶¶ 4-5, 12.) Again, however, because Plaintiff has failed to establish that the cargo was actually loaded, the court does not now reach a conclusion as to whether the cargo was in good order and condition when loaded.

According to Plaintiff, after the cargo was loaded into the container, employees of Alpine of Hungary and a customs agent, Jozsefne Mizerak, affixed Seal No. NYK 0269869 and another seal, which the parties do not discuss in any detail, to the container's doors. (Pl. LR 56.1 Stmt. ¶¶ 9-10.) It is undisputed that Mizerak was responsible for verifying that the seals were properly affixed and that Seal No. NYK 0269869 was a "bolt seal," which is a seal that can only be removed from the container's door handles by being cut. (*Id.* ¶¶ 11, 14.) Defendants admit that the seal was affixed to the container as described, but they contest Plaintiff's statement that this occurred after the cargo

was loaded, a statement supported only by Mizerak's declaration. (Def. LR 56.1 Resp. ¶ 9.) Defendants note that, although Mizerak attested that no shipment is allowed to leave Alpine's facility unless the loading of the shipment is verified by a warehouse administrator, she also attested that it is not her responsibility to physically attend the loading of the cargo. (*Id.*; Declaration of Jozsefne Mizerak ¶¶ 2, 5, Ex. D to Pl. LR 56.1 Stmt.) The court therefore finds it to be undisputed that Seal No. NYK 0269869 was affixed to Container No. NYKU 608014-7. Without competent evidence relating to the loading of the cargo, however, the court is not satisfied that the cargo was loaded before the seal was affixed and finds this fact to be in dispute.

Container No. NYKU 608014-7 was transported from "Biatorbagy, Hungary to Chicago, Illinois under New Wave Logistics (USA), Inc., Bill of Lading AOHU 109412004 dated April 7, 2004, and NYKS Line Waybill No. NYKS 590001019 (Bremerhaven to Chicago, Illinois), also dated April 7, 2004." (Def. LR 56.1 Stmt. ¶ 17.) On April 26, 2004, ARL received Container No. NYKU 608014-7 at the CSX rail yard in Chicago for transport to Alpine Electronics Manufacturing of America, Inc. in Greenwood, Indiana. (Pl. LR 56.1 Stmt. ¶¶ 3, 6,12.)

Defendants contend that Defendant ARL contracted with a company named NYK Lines[3] to transport a sealed container, Container No. NYKU 608014, from Chicago, Illinois to the "Phoenix Warehouse" in Greenwood, Indiana, on or about April 26, 2004. (Def. LR 56.1 Stmt. ¶ 1; *see* Defendants, ARL, Inc. and Mr. James Evans' Answer to Plaintiff's Amended Complaint at Law ¶¶ 3, 7, Ex. B to Defendants' Motion for Summary Judgment ("Def. SJ Mot.").)[4] Though Plaintiff admits that ARL contracted to transport this sealed container, Plaintiff disputes that ARL contracted with

---

[3]     The parties provide no other information concerning this company.

[4]     In their statement of material facts, Defendants on occasion refer to the relevant container as Container No. NYKU 608014. (*See, e.g.*, Def. LR 56.1 Stmt. ¶ 1.) Plaintiff has not raised an argument that this container is different than Container No. NYKU 608014-7, the container to which the court has previously referred. Without reason to believe otherwise, the court assumes that Container No. NYKU 608014-7 and Container No. NYKU 608014 are the same.

NYK Lines to do so. (Pl. LR 56.1 Resp. ¶ 1.) Plaintiff points to the testimony of Bruce Moore, an employee of Defendant Moore Transportation;[5] Moore Transportation procures shipping business for ARL and procured the shipment of the subject container from Chicago to Indiana for ARL. (Def. LR 56.1 Stmt. ¶ 4.)[6] Mr. Moore testified that his contact regarding "the pick-up number" for the container was MOL Logistics, "an arm of Mitsui," that he had not had any conversations with a representative of NYK Lines regarding the incident in question, and that ARL billed MOL Logistics for the shipment. (Deposition of Bruce Moore at 29-30, 47, Ex. A to Pl. LR 56.1 Resp.)[7] Based on this testimony, the court concludes there is a genuine dispute as to whether Defendant ARL contracted with NYK Lines to transport the container from Chicago to Greenwood. The parties agree that ARL invoiced MOL Logistics for ARL's services in connection with the shipment of Container No. 608014-7 on April 26 and April 27, 2004. (Pl. LR 56.1 Stmt. ¶ 28.)

In April 2004, Defendant James Evans was an independent contractor working as a driver for ARL. (Deposition of James Evans at 89, Ex. E to Def. SJ Mot.; Pl. LR 56.1 Stmt. ¶ 12.)[8]

---

[5]     It is undisputed that Defendant Moore is not licensed for the carriage of goods and does not own any trucks. (Def. LR 56.1 Stmt. ¶¶ 5-6.)

[6]     According to Plaintiff, a question of fact exists as to whether Mr. Moore "held himself out as accepting responsibility for the subject shipment." (Pl. LR 56.1 Resp. ¶ 4.) The court need not determine whether Plaintiff is correct that a question of fact exists regarding whether Mr. Moore "held himself out as accepting responsibility for the subject shipment" as, in the court's view, this dispute does not contradict Defendants' statement that Defendant Moore acted as a broker for the shipment of the subject cargo from Chicago to Indiana and that Mr. Moore procures shipments for ARL. (Def. LR. 56.1 Stmt. ¶ 4.)

[7]     The parties do not set forth facts regarding MOL Logistics, what type of function it serves generally, or what function it served with regard to the transport of the cargo that is the subject of this case. As the court understands Mr. Moore's testimony, MOL Logistics was the "steamship line" that would give him the "pick-up number" so that the load could be released or picked up by a carrier—in this case, ARL. (Moore Dep. at 28-29.) The parties also offer no explanation as to how/why Mitsui, a commercial insurer, has a logistics company as its "arm."

[8]     Defendants assert, and Plaintiff does not dispute, that Defendant Evans is "an owner/operator for ARL." Evans actually testified that in April 2004 he was employed by ARL as an "independent contractor." (Evans Dep. at 89.)

According to Defendants, other than dispatching Evans to pick up the subject container, Defendant Moore had no other involvement with the shipment. (Def. LR 56.1 Stmt. ¶ 7.) The cited testimony, however, does not support this assertion; Mr. Moore testified that he was involved in the booking of the shipment with Alpine, and that he attended a meeting in connection with the shipment after the container was delivered without the cargo. (Moore Dep. at 7-8, 19-20, 28-29.)

The parties agree that when Defendants ARL and Evans received the container at the CSX rail yard in Chicago, Seal No. NYK 0269869 was intact and properly affixed to the container's doors. (Pl. LR 56.1 Stmt. ¶ 13.) Defendants assert further that the seals were intact upon delivery of the container in Greenwood, Indiana. (Def. LR 56.1 Stmt. ¶ 9.) Plaintiff attempts to dispute this fact, noting Evans's testimony that, upon arriving at the Greenwood facility, he cut the "bolt seals" on the container with bolt cutters before backing into "the docks"; Evans characterized this as the regular procedure he would follow when he delivered containers to that particular facility through and including April 27, 2004. (Evans Dep. at 34-38, 42; Pl. LR 56.1 Stmt. ¶ 16.)[9] Evans's practice of cutting the bolt seals before backing into the docks is not inconsistent with Defendant's assertion that the containers were still sealed at the point he arrived at the Greenwood facility. (*Id.*) If the seals were intact at the time Evans arrived at the Greenwood facility, they must also have been intact when Evans departed Chicago with the container.

The Department of Transportation and ARL company policy require drivers, such as Evans, to keep an accurate driver's log. (Pl. LR 56.1 Stmt. ¶¶ 21-22.) Evans testified that, prior to April 27, 2004, he had received a copy of ARL's Policies and Procedures Manual and had at least skimmed it. (*Id.* ¶ 26.) This manual states that "on duty time includes time driving the vehicle and

---

[9] Plaintiff attempts to assert, more generally, that Evans cut the seal "some time after he left the CSX rail yard on April 26, 2004 and before he backed the container into a dock door at the delivery location in Greenwood, Indiana." (Pl. LR 56.1 Stmt. ¶ 15.) Evans did testify that he cut the seal before backing into the dock; his testimony is also clear that he did not cut the seal until arriving at the delivery location in Greenwood. (Evans Dep. at 34-38.)

performing any work of the carrier, including time related to unloading or the giving or receiving receipts for unloading, but excludes time spent resting in the sleeper berth." (*Id.* ¶ 27.) Evans' log indicates that he was in the sleeper from 11:00 p.m. on April 26, 2004 until 11:30 a.m. on April 27, 2004. (*Id.* ¶ 23.) In fact, however, on April 27, 2004, Evans signed the Visitor's Register at the Phoenix warehouse at 6:00 a.m, after he had entered the lot and cut the seal from the container's doors. (*Id.* ¶ 24.) Evans left the Phoenix warehouse at 11:30 a.m. on April 27, 2004. (*Id.* ¶ 25.) The parties also agree that Evans slept "somewhere" between the time he received the container in Chicago and the time he tendered delivery at the Phoenix warehouse in Greenwood.

ARL issued a bill of lading "for the receipt and transportation of Container No. NYKU 608014 from CSX Chicago to the Alpine Warehouse in Greenwood[,]" Indiana; this bill of lading did not reflect the weight of the subject container. (Def. LR 56.1 Stmt. ¶¶ 2-3.) Plaintiff admits that ARL submitted this bill of lading to Alpine upon Evans's delivery of the subject container in Greenwood. (Pl. LR 56.1 Resp. ¶ 2; 4/27/04 Bill of Lading, Ex. C to Def. SJ Mot.)[10] Dave Furbee, an Alpine employee, signed the ARL bill of lading when Evans arrived at the Phoenix warehouse and noted on the bill of lading, "seal in tact [sic]." (4/27/04 Bill of Lading; Deposition of Dave Furbee at 35-36, Ex. F to Def. SJ Mot.)[11] It is undisputed that when Furbee made this notation, Evans had already used bolt cutters to cut the seal. (Pl. LR 56.1 Stmt. ¶ 18.) In his deposition, Furbee acknowledged

---

[10] Plaintiff contends that no bill of lading was issued to anyone at the time ARL *received* the subject container, (Pl. LR 56.1 Resp. ¶ 2), but this is not inconsistent with Defendant's version. In stating that ARL issued a bill of lading "for the receipt and transportation" of the subject container, Defendants cite only to the bill of lading dated April 27, 2004; thus, Defendants' factual statement refers only to the one bill of lading that was issued when ARL transported and Alpine received the subject container in Greenwood. (Def. LR 56.1 Stmt. ¶ 2.)

[11] Adam Grosch is a manager of operations for the Phoenix Group and oversaw dock operations, including dock workers, at the warehouse where the subject container was delivered on April 27, 2004. (Def. LR 56.1 Stmt. ¶ 13.) Grosch testified that, to him, the term "seal intact" means that he or an associate would have ensured that a seal was "intact"; in other words, affixed to the back of the container and sealing the load. (*Id.* ¶¶ 14-15.) In the context of a bill of lading, Grosch testified, the words "seal intact" would indicate that the seal was on the container. (*Id.* ¶ 16.)

that although he "went out and saw that the seal was on the ground" and had no reason to think that the seal was not intact when it came into the lot, he did not actually see Evans cut the seal. (Def. LR 56.1 Stmt. ¶ 12; Furbee Dep. at 14, 35-36.) Furbee recalled that he may have told a co-worker, Rajeana Ray, that he did see Evans cut the seal, but Ray herself has no such recollection. (Def. LR 56.1 Stmt. ¶ 11; Deposition of Rajeana Ray at 21-22, Ex. C to Def. LR 56.1 Stmt.) For his part, Evans testified that he observed an individual in Alpine's office, some sixty feet away, when he cut the seal, but he admits that no one was present with him at the back of the container doors at the time he cut the seal. (Pl. LR 56.1 Stmt. ¶¶ 19-20.) Evans had made hundreds of deliveries to the Phoenix warehouse prior to April 27, 2004 and had never before delivered an empty container or a container where a shortage was noted. (*Id.* ¶ 36.) The parties agree that on this occasion, however, when Evans opened the doors to the container at the Phoenix warehouse, there were some "skids" and plastic shrink wrap in the container but the cargo was not there. (*Id.* ¶ 17.)

Plaintiff Mitsui paid Alpine $408,012.00 under Policy No. 945-440098 for the loss of the cargo. (*Id.* ¶ 38.)

## 2. Investigations of the Lost Cargo

On May 4, 2004, Michael Newstead, an investigator for Signum Services Limited, was assigned to investigate the reported theft of the shipment that is the subject of this case. (Declaration of Michael Edmund Newstead ¶ 5, Ex. I to Pl. LR 56.1 Stmt.) Newstead issued an eight-page report, dated July 22, 2004, detailing his investigation. (Def. Add'l LR 56.1 Stmt. ¶ 1.)[12] Newstead inspected the container after Evans returned it empty to Chicago and found no evidence

---

[12] Signum Services Limited is the investigative unit of Thomas Miller & Co, a company that acts for the members of the United Kingdom Protection & Indemnity Club. (Newstead Decl. ¶ 2.) The parties do not explain why Newstead was hired or by whom. According to Newstead's report, his investigation began with meeting someone from "NYK Logistics Budapest," and his final report was addressed to an individual in "Claims Department NYK." (Report on Theft of Electronic Equipment from Container Number NYKU 6080147 at 1, Ex. J to Def. LR 56.1 Add'l Stmt.)

that the container had been tampered with in a manner such that the cargo could have been removed from the container without cutting the seals on the container doors. (Pl. LR 56.1 Stmt. ¶ 32.) Newstead also inspected the seal that had been cut from the container and confirmed that the seal was a "high security Bolt Seal," removable, if properly affixed, only by cutting. (*Id.* ¶ 34.) Newstead traced the transport path of the container from Hungary to Chicago and found no opportunity for anyone to have tampered with it in any manner such that the subject goods could have been removed without cutting the seal. (*Id.* ¶ 35.)

Newstead did observe differences in the pins that secured the right and left door handles of the container; he noted that the "pins on the right hand door bar handles are retained to the door bars with rusty pins, whilst the left door bar handles are secured with galvanised pins." (Def. Add'l LR 56. Stmt. ¶ 2; Report on Theft of Electronic Equipment from Container Number NYKU 6080147 at 5, Ex. J to Def. LR 56.1 Add'l Stmt. ("Newstead Report").) Apart from this difference, however, Newstead found no difference in the composition of the pins and "no significant door surface behind these fittings." (Newstead Report at 5.) Newstead noted that upon the container's arrival in Bremerhaven, Germany, on its route to the United States, the seal, which is checked at the terminal, was recorded as Seal No. 0269868, not No. 0269869, which was the seal originally affixed. (Def. LR Add'l 56.1 Stmt. ¶ 3.) Newstead opined, however, that this may have been a human recording error, given that the number recorded in Bremerhaven was actually "issued by NYK" for unrelated cargo shipped to Singapore. (Newstead Report at 3.) Further, upon arrival at the CSX yard in New Jersey on April 19, 2004, it was noted that Seal No. 0269869 was in place on the container. (Def. LR Add'l 56.1 Stmt. ¶ 4.)

Robert Sinnokrak is in the business of inspecting cargo, including ocean containers, and has been in that business for more than thirty years. (Deposition of Robert Louis Sinnokrak at 6, 16, Ex. K to Def. Add'l LR 56.1 Stmt.) At the request of NYK Line, Sinnokrak also inspected the

container on April 30, 2004.  (Def. LR 56.1 Add'l Stmt. ¶ 6; Sinnokrak Dep. at 8-9.)[13]  Sinnokrak's inspection of the container in this case revealed that "the fasteners that hold the handles, the operating handles onto the actual locking bars were different"; the hinge pin on the left door "appeared to be either of stainless steel or galvanized" and the pin on the right door "seemed to be of a carbon steel type that was oxidized or rusted."  (Def. Add'l LR 56.1 Stmt. ¶ 7.)  Sinnokrak acknowledged that he had no way of knowing what sort of pin stock was available or whether the different pins were a function of running out of pins, though he thought it seemed "a little bit odd" to have dissimilar pins on a relatively new container.  (Sinnorak Dep. at 23-24.)  Sinnokrak also testified that if someone were to remove these pins, it might be possible for the door to be manipulated open while the seal remained intact.  (Def. Add'l LR 56.1 Stmt. ¶ 8.)[14]

The court considers the parties' motions for summary judgment in light of the facts as outlined above.

### DISCUSSION

As noted earlier, Plaintiff brings claims against all three Defendants—ARL, Moore Transportation, and James Evans—under the Carmack Amendment, 49 U.S.C. § 14706, and common law theories.  Plaintiff seeks summary judgment only on its Carmack Amendment claim against Defendant ARL (Count IV).  Plaintiff's motion is supported by a memorandum of law in which Plaintiff argues that ARL is subject to the Carmack Amendment as the delivering carrier of the cargo, that Plaintiff has established a *prima facie* case under the Carmack Amendment, and that ARL cannot establish facts that would allow it to escape such liability.  (Plaintiff's Memorandum

---

[13]    As Plaintiff notes, the portion of Sinnokrak's testimony that Defendants cite does not support this assertion, but Sinnokrak testified elsewhere that he inspected the container at the request of NYK Line.  (Sinnokrak Dep. at 8.)

[14]    Plaintiff admits only that Sinnokrak stated that someone could have gained access to the container by "manipulating the fasteners/pins without breaking the seal[,]" however, Sinnokrak's testimony is clear that a pin would have to be *removed* to gain access to the container in this manner.  (Pl. LR 56.1 Resp. to Def. Add'l Stmt. ¶ 8; Sinnokrak Dep. at 25.)

in Support of its Motion for Summary Judgment Against ARL, Inc. on Count IV ("Pl. Mem.") at 4-7.) Defendants have moved for summary judgment on all counts. They argue in their motion that the Carmack Amendment is Plaintiff's exclusive remedy against a carrier, and that Plaintiff is therefore precluded from bringing its common law claims against ARL. (Def. SJ Mot. ¶¶ 3-4.) ARL further argues that Plaintiff cannot establish that it tendered cargo to ARL so as to maintain its Carmack Amendment claim. (*Id.* ¶ 5.) Plaintiff's Carmack Amendment claims against Defendants Moore and Evans should also be dismissed, according to these Defendants, because they are not covered by the Carmack Amendment. (*Id.* ¶ 6.) Finally, Defendants argue that Defendant Moore was not involved in the physical carriage or control of the goods and cannot be held liable under either of Plaintiff's common law theories, and that Defendant Evans cannot be held liable under Plaintiff's common law theories because he did not have a contract of carriage with Plaintiff and because he received and delivered a sealed container. (*Id.* ¶¶ 7-9.)

Defendants' arguments, outlined above, are laid out in a cursory manner in their motion for summary judgment but are otherwise undeveloped. Defendants' motion for summary judgment refers to a "Memorandum of Law in Support of their Motion for Summary Judgment" that they purportedly "incorporate[d] by reference," (Def. SJ Mot. ¶ 9), but no such memorandum was filed with the court, nor was it served on Plaintiff. (Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl. SJ Resp.") at 10.) Nevertheless, Defendants' reply brief makes no mention of the failure to file an opening memorandum and focuses on just one claim, Plaintiff's Carmack Amendment claim against ARL (Count IV). Defendants present no arguments on any of the eight other counts. (*See* Defendants' Reply Brief in Support of Their Motion for Summary Judgment ("Def. SJ Reply").)

The law of the Seventh Circuit is clear: "Perfunctory or undeveloped arguments are waived." *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (citing *Colburn v. Trs. of Ind. Univ.*, 973 F.2d 581, 593 (7th Cir. 1992); *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417 (7th Cir. 1986));

*see also Freeman United Coal Mining Co. v. Office of Workers' Comp. Programs, Benefits Review Bd.*, 957 F.2d 302, 305 (7th Cir. 1992) (court has no obligation to consider an argument that "is merely raised, but not developed, in a party's brief") (citation omitted); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim."). To the extent Defendants have failed to develop an argument that Plaintiff disputes, the court will view such an argument as waived.

### A. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 322-23. If the moving party meets this burden, the non-moving party must then "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Id.*

### B. Carmack Amendment Claims

Under the Carmack Amendment, 49 U.S.C. § 14706, shippers can "recover for actual losses to their property caused by carriers." *Allied Tube & Conduit Corp. v. S. Pacific Transp. Co.*, 211

F.3d 367, 369 (7th Cir. 2000) (citing *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 285-86 (7th Cir. 1997)). In order to recover damages under the Carmack Amendment, the shipper must establish a *prima facie* case that "(1) the goods in question had been delivered to the carrier in good condition; (2) the goods had arrived at the final destination in a damaged or diminished condition; and (3) the damages can be specified." *See Pharma Bio, Inc. v. TNT Holland Motor Express, Inc.*, 102 F.3d 914, 916 (7th Cir. 1996) (citing *Mo. Pacific R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)); *see also Am. Nat. Fire Ins. Co v. Yellow Freight Sys. Inc.*, 325 F.3d 924, 929 (7th Cir. 2003) (citing *Allied Tube & Conduit Corp.*, 211 F.3d at 369) (stating the elements of *prima facie* case for liability under the Carmack Amendment). If the shipper makes such a showing, the carrier then bears the burden of showing that it was free from negligence and "that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Am. Nat. Fire Ins. Co.*, 325 F.3d at 929 (citing *Allied Tube & Conduit Corp.*, 211 F.3d at 369). The excepted causes that relieve the carrier of liability are: (1) acts of God; (2) acts of the public enemy; (3) acts of the shipper itself; or (4) the inherent vice or nature of the goods. *Allied Tube & Conduit Corp.*, 211 F.3d at 369-70 (citing *Miss. Pacific R.R. Co.*, 377 U.S. at 137 n.2).

### i. Moore Transportation (Count I)

Defendant Moore moves for summary judgment on Plaintiff's Carmack Amendment claim against it. Defendants' motion for summary judgment states that Moore cannot be held liable under the Carmack Amendment because it is "not a licensed carrier within the meaning of the Carmack Amendment," and that "a freight broker such as Moore . . . is not a carrier for purposed [sic] of the Carmack Amendment . . . ." (Def. SJ Mot. ¶ 6.) Plaintiff contends that although Defendants label Defendant Moore as a "broker" with respect to the shipment of cargo from Chicago to Indiana, Bruce Moore's testimony raises questions of fact as to whether Defendant Moore qualifies as a "carrier" or a "freight forwarder" within the meaning of the Carmack Amendment. (Pl. SJ Resp. at

2-4.) Citing *Lumbermens Mutual Casualty Company v. GES Exposition Services, Inc.*, 303 F. Supp. 2d 920 (N.D. Ill. 2003), Plaintiff argues that whether a company is a broker or a carrier/freight forwarder "is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper." *Id.* at 921 (citing *Custom Cartage, Inc. v. Motorola, Inc.*, No. 98-C-5182, 1999 WL 965686, at **11-12 (N.D. Ill. Oct. 15, 1999)). The court need not pass on the merits of Plaintiff's argument at this time. Defendants' motion merely states that Moore is not a licensed carrier under the Carmack Amendment and that a "freight broker such as Moore . . . is not a carrier" under the Amendment. (Def. SJ Mot. ¶ 6.) Defendant Moore does not develop this argument in light of the facts or law and the court will not do so on the Defendant's behalf. Thus, the court denies summary judgment on Count I.

### ii.    ARL, Inc. (Count IV)

Both Plaintiff and ARL move for summary judgment on Count IV, Plaintiff's Carmack Amendment claim against ARL. Plaintiff argues that it has established the elements of a *prima facie* case under the Carmack Amendment—that it delivered the shipment to Defendant ARL in good condition, that ARL delivered it in a diminished condition, and that the damages can be specified. According to Plaintiff, the record shows no disputes concerning these facts: that Alpine of Hungary loaded the shipment into Container No. NYKU 608014-7 in good condition with Seal No. 0269869 properly affixed, that this seal was properly affixed when Defendant ARL received the container, and that the cargo was not in the container when ARL tendered delivery. (Pl. Mem. at 5-7.) Thus, Plaintiff argues, ARL is required to establish that the loss of the shipment did not occur as a result of its own negligence and that the loss was the result of one of the excepted causes under the Carmack Amendment. (*Id.*) ARL does not dispute that it is a "carrier" within the meaning of the Carmack Amendment, but contends that there is a question of fact regarding whether goods were ever tendered to ARL for delivery in good condition. (Defendants' Response Brief in Opposition to Plaintiff's Motion for Summary Judgment ("Def. SJ Resp.") at 2.) ARL notes that the

container was sealed when ARL received it and when it was picked up by Evans, the weight of the container was not reflected on the bill of lading, and the container was sealed upon its delivery to the Phoenix warehouse in Greenwood, Indiana. (Def. SJ Mot. ¶ 5; Def. SJ Reply at 2.) In ARL's view, these same facts—that ARL picked up and delivered a sealed container—entitle it to summary judgment on Count IV. (Def. SJ Mot. ¶ 5.)

The court finds disputes of fact precluding summary judgment for either party on the Carmack Amendment claim against ARL. First, as described earlier, the parties dispute whether Alpine of Hungary actually loaded the relevant cargo—1,500 CD-tape audio units—into Container No. NYKU 608014-7, the container that ARL eventually took possession of and delivered to Greenwood. Further, the bill of lading issued by ARL for Container No. NYKU 608014-7 did not reflect the weight of the subject container when it was in ARL's possession, which could have confirmed whether the cargo was in the container when it was delivered to ARL. (Def. LR 56.1 Stmt. ¶ 3.)[15] Without question, a dispute over whether Alpine of Hungary initially loaded the cargo

---

[15]    In its reply memorandum in support of its motion for summary judgment on Count IV, Plaintiff argues for the first time that a "commercial invoice and packing list" and the NYK and New Wave bills of lading establish the weight of the container when it was delivered to the ocean carrier so as to confirm that Alpine of Hungary loaded the cargo into the container. (Plaintiff Mitsui Sumitomo Insurance Co., Ltd.'s Reply Memorandum in Support of its Motion for Summary Judgment on Count IV (Carmack) of its Amended Complaint ("Pl. SJ Reply") at 4.) Neither Plaintiff nor Defendants set forth any facts in their statements under Local Rule 56.1 that relate to the weight of the cargo as recorded on the documents to which Plaintiff now refers. While Plaintiff is correct that Defendants referred to the NYK and New Wave bills of lading in their statement of material facts and attached them to their statement of facts, Defendants referred to these bills of lading only for the purpose of establishing the path by which the cargo was transported and made no mention of the weight of the cargo. (Def. LR 56.1 Stmt. ¶ 17.) Thus, not only is Plaintiff raising this argument for the first time in its reply brief, but Plaintiff is also relying on facts not addressed in the parties' statements of material facts to make this argument. The court declines to address this argument. *See United States v. Adamson*, 441 F.3d 513, 521 (7th Cir. 2006) (citing *United States v. Blaylock*, 413 F.3d 616, 619 (7th Cir. 2005) (arguments raised for first time in reply brief are waived); *United States v. Duran*, 407 F.3d 828, 844 n.7 (7th Cir. 2005) (arguments not raised in opening brief are waived). The court notes, however, that even if the evidence relating to the weight of the container when it was delivered to the ocean carrier establishes that the cargo was in fact delivered to ARL—a matter not at all free from doubt—there remains a dispute, discussed *infra*, regarding whether the cargo could have been accessed without breaking the container's seal.
(continued...)

15

is material to the question of whether the cargo was delivered to ARL. This question of fact defeats Plaintiff's motion for summary judgment on its Carmack Amendment claim against ARL. *See Am. Nat. Fire Ins. Co.*, 325 F.3d at 929 (shipper must show "delivery in good condition" to establish a *prima facie* case under the Carmack Amendment).

Nor is ARL entitled to summary judgment on Count IV. While the court cannot find, based on the evidence set forth, that the cargo was delivered to ARL in good condition, it also cannot conclude that the goods were not delivered to ARL in good condition. Thus, it remains a distinct possibility that, on a more complete factual record, Plaintiff may be able to establish that ARL did in fact receive the cargo in good condition, in which case ARL would then bear the burden of showing that it was free from negligence and "that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Am. Nat. Fire Ins. Co.*, 325 F.3d at 929 (citing *Allied Tube & Conduit Corp.*, 211 F.3d at 369).

Evidence that the container was sealed when ARL took possession of the container and when it was delivered to the warehouse does not alter the court's conclusion. (Def. SJ Mot. at ¶ 5.) It is true that the parties do not dispute that the container when sealed when ARL and Evans received it, (Pl. LR 56.1 Stmt. ¶ 13), nor does the court find a dispute as to whether the bolt seal was intact upon delivery of the container in Greenwood, Indiana. (Def. LR 56.1 Stmt. ¶ 9.) These facts do not, however, establish conclusively that the cargo was not in the container at the time the container was delivered to ARL or that the loss did not occur while the container was in ARL's possession. Though the parties agree that a bolt seal on the container would have to be cut off to be removed from the container's door handles, (Pl. LR 56.1 Stmt. ¶ 14), Sinnokrak testified that it is possible that someone could open the container by removing pins from the door while keeping

---

[15](...continued)
If the cargo was damaged while in ARL's possession, it could be the result of one of the Carmack Amendment's excepted causes. Because the court cannot make this determination on the current factual record, a grant of summary judgment on Count IV would be premature.

the seal intact. (Def. Add'l LR 56.1 Stmt. ¶ 8.) Based on this testimony, it is possible that the cargo was delivered to ARL in good condition even if the container was sealed when ARL received it and when ARL delivered it in Greenwood. Newstead, on the other hand, reached a contrary conclusion; he found no evidence that the cargo could have been removed from the container without cutting the seals on the container's doors and concludes the cargo must have been in the container upon its delivery to ARL in Chicago. (Pl. LR 56.1 Stmt. ¶ 32; Newstead Report at 7-8.) The court concludes there is a material dispute as to whether the cargo was ever delivered to ARL.

Citing *Bally, Inc. v. M.V. Zim America*, 22 F.3d 65 (2d Cir. 1994), ARL contends that the fact that a container is sealed the entire time it is in a carrier's custody undermines an argument that damage to the goods occurred when the container was in the carrier's custody. *Id.* at 70. While Defendant is correct that *Bally* stands for this proposition, *Bally* is not persuasive here. The *Bally* court stated that "[d]elivery by a carrier of a container with intact seal does not conclusively prove that loss did not occur while the container was in the carrier's possession," and emphasized that the importance of intact seals is a case-specific analysis. *Id.* at 70. In this case, the conflicting conclusions of Newstead and Sinnokrak regarding whether the subject container could have been opened without breaking the bolt seal prohibits the court from relying on the intact seals to conclude that damage could not have occurred while the container was in ARL's custody. Given the undisputed facts that the seals were intact when ARL obtained and delivered the container, if it is true that the cargo could not have been removed from the container without cutting the seals, then it cannot be that the cargo was in the container when ARL obtained the container. This additional dispute confirms that summary judgment on Count IV is not proper.[16]

---

[16]     The court has considered a number of additional cases discussed by the parties in their briefs. In light of the court's conclusion that a dispute of fact exists regarding whether the goods were ever delivered to ARL in the first instance, the cases the parties discuss are not helpful. In *Duck Head Footwear v. Mason and Dixon Lines, Inc.*, 41 Fed. Appx. 692 (4th Cir. 2002), cited by Plaintiff, the Fourth Circuit held that the fact that the seals on the subject shipment were intact
(continued...)

Even if Plaintiff could establish its *prima facie* case under the Carmack Amendment, this dispute between Newstead and Sinnokrak over whether the cargo could have been accessed while keeping the container's seals intact still precludes a grant of summary judgment on Count IV. After all, if the cargo could have been accessed without breaking the bolt seal on the container, it remains possible that even if damage to the cargo occurred while it was in ARL's possession, ARL may be able to show that damage to the cargo "was due to one of the excepted causes relieving the carrier of liability." *Am. Nat. Fire Ins. Co.*, 325 F.3d at 929 (citing *Allied Tube & Conduit Corp.*, 211 F.3d at 369). The court therefore denies summary judgment to both Plaintiff and ARL on Count IV.

### iii. James Evans (Count VII)

Plaintiff does not contest that Defendant Evans was not a carrier within the meaning of the Carmack Amendment. (Pl. SJ Resp. at 9.) The court therefore grants Defendants' motion for summary judgment as to Count VII.

### C. Breach of Intermodal Transportation Contract

In Counts II, V, and VII, Plaintiff claims that each of the Defendants breached an agreement to pick up Container No. 608014-7 from the CSX rail yard in Chicago and to deliver it to Alpine in Greenwood, Indiana by failing to deliver the cargo to Alpine. Each Defendant moves for summary judgment on Plaintiff's respective breach of contract claims.

### i. Moore Transportation (Count II)

---

[16](...continued)
did not constitute a defense to liability under the Carmack Amendment because such evidence did not fit within any of the allowable defenses under the Carmack Amendment. *Id.* at 698-99. To the extent ARL discusses whether the seals were intact in this case, it does so in relation to whether Plaintiff can establish that it delivered the cargo to ARL in good condition, an issue that is not addressed in *Duck Head Footwear.* Plaintiff also cites *AIG Europe, S.A. v. Locust Point Terminal Corp.*, No. 96-2437, 1998 WL 1327 (4th Cir. Jan. 5, 1998); in that case, the court found a carrier liable where shipments of leather were found to have shortages when the shipments were opened at their final destination. *Id.* at *1. But, unlike this case, there was no dispute in *AIG Europe* over whether a complete set of goods had initially been loaded into the subject containers. *Id.*

With respect to Count II for breach of contract against Defendant Moore, the only argument stated in Defendants' motion for summary judgment is that "[b]ecause defendant Moore was not involved in the physical carriage or control of the goods, he cannot be liable under [Count II] . . . ." (Def. SJ Mot. ¶ 7.)  Plaintiff contests that Defendant Moore is entitled to summary judgment on Count II, arguing that a question of fact exists as to whether Bruce Moore accepted responsibility for the subject shipment.  (Pl. SJ Resp. at 4.)  Defendant Moore has not developed its argument, and the single sentence in Defendants' motion for summary judgment is not sufficient to satisfy the court that Moore is entitled to summary judgment on Count II.  Summary judgment on Count II is denied.

### ii.       ARL, Inc. (Count V)

ARL also moves for summary judgment on Count V on the basis that, because ARL is a carrier within the Carmack Amendment, ARL cannot be held liable for Plaintiff's common law claim for breach of contract.  (Def. SJ Mot. ¶ 4.)  Defendant notes that the Carmack Amendment provides the exclusive remedy for a shipper and preempts common law claims against the carrier; Defendants acknowledge that "ARL is a carrier under the definition set forth" in the Carmack Amendment.  (*Id.*)  The Carmack Amendment preempts a shipper from seeking "'state and common law remedies . . . where goods are damaged or lost in interstate commerce.'"  *Gordon*, 130 F.3d at 288 (quoting *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1414 (7th Cir. 1987)).  While it is true that the Carmack Amendment "does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce," *Gordon*, 130 F.3d at 289, the parties do not dispute that Plaintiff's claim for breach of contract only aims to address the loss of the subject cargo.  Plaintiff concedes that to the extent ARL admits that it is subject to the Carmack Amendment in relation to its transport of the subject container, that act "would solely govern ARL's liability in this instance and would

preempt all state law causes of action." (Pl. Resp. at 8.) The court therefore grants summary judgment on Count V in favor of Defendant ARL.

### iii.    James Evans (Count VIII)

With respect to Count VIII for breach of contract against Defendant Evans, the only argument stated in Defendants' motion for summary judgment is that "[b]ecause Evans did not have a contract of carriage with Plaintiff for the subject goods, he cannot be liable under Count VIII." (Def. SJ Mot. ¶ 8.) In response, Plaintiff notes that Evans had custody of the shipment and undertook to deliver the shipment in Greenwood. (Pl. SJ Resp. at 9.) Plaintiff also argues that questions of fact remain as to whether Evans is liable for breach of contract. (*Id.*) Defendant Evans has not developed its argument, and the single sentence in Defendants' motion for summary judgment does not sufficiently inform the court as to the reasons why Evans should be granted summary judgment on Count VIII. Summary judgment on Count VIII is denied.

### D.    Breach of Obligations as Carrier and/or Bailee

In Counts III, VI, and IX, Plaintiff claims that each of the Defendants were operating as a common carrier and/or bailee with respect to the cargo and breached their duties and obligations by failing to deliver the cargo in the same condition as it was received. Each Defendant moves for summary judgment on Plaintiff's respective claim for breach of obligations as carrier and/or bailee.

### i.    Moore Transportation (Count III)

With respect to Count III for breach of obligations as carrier and/or bailee against Defendant Moore, the only argument stated in Defendants' motion for summary judgment is that "[b]ecause defendant Moore was not involved in the physical carriage or control of the goods, he cannot be liable under . . . [Count III] . . . ." (Def. SJ Mot. ¶ 7.) Plaintiff contests that Defendant Moore is entitled to summary judgment on Count III, arguing that a question of fact exists as to whether Mr. Moore accepted responsibility for the subject shipment as a carrier or bailee. (Pl. SJ Resp. at 4.) Defendant Moore has not developed its argument, and the cursory treatment of Count III in

Defendants' motion for summary judgment does not clarify for the court why Moore Transportation is entitled to summary judgment on Count III. Summary judgment on Count III is denied.

### ii.     ARL, Inc. (Count VI)

ARL moves for summary judgment on Count VI on the same basis on which this court granted summary judgment on Count V: because ARL is a carrier within the Carmack Amendment, ARL cannot be held liable for Plaintiff's common law claim for breach of obligation as a carrier and/or bailee. (Def. SJ Mot. ¶ 4.) Like Plaintiff's breach of contract claim against ARL, Plaintiff's common law claim in Count VI aims to address the loss of the subject cargo. Thus, for the same reasons the court articulated with respect to Count V, the Carmack Amendment preempts Plaintiff's common law claim against ARL for breach of any obligation as a carrier and/or bailee. (*See supra* Section C.ii.) Summary judgment is granted in ARL's favor on Count VI.

### iii.     James Evans (Count IX)

With respect to Count IX for breach of obligations as carrier and/or bailee against Defendant Evans, the only argument stated in Defendants' motion for summary judgment is that "since the evidence is that [Evans] received and delivered a sealed container, he cannot be held liable under Count IX." (Def. SJ Mot. ¶ 8.) Plaintiff argues that Defendant Evans is not entitled to summary judgment on Count IX based on the fact that Evans had custody of the shipment and undertook to deliver the shipment in Greenwood. (Pl. SJ Resp. at 9.) Defendant Evans has not developed its argument, and Defendants' motion for summary judgment does not sufficiently inform the court as to why Evans should be granted summary judgment on Count IX. Summary judgment on Count IX is denied.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (32) against Defendant ARL, Inc. on Count IV is denied. Defendants' motion for summary judgment (35) is granted as to Counts V, VI, and VII and is denied as to all remaining counts.

ENTER:

Dated: May 23, 2007

_____

REBECCA R. PALLMEYER
United States District Judge